[Civ. No. 57851. Second Dist., Div. One. Apr. 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
AMWEST SURETY INSURANCE COMPANY,
Defendant and Appellant.

52

**COUNSEL**

Paul M. Vidor and Mazo, Crystal & Vidor for Defendant and Appellant.

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

WEISZ, J.*—Appellant, the surety on a bail bond, appeals from an order denying his motion to vacate forfeiture and exonerate the bail.

The facts are clear, and simple enough. When the defendant in a burglary case failed to appear for trial on February 1, 1979, his bail was ordered forfeited, and a bench warrant was ordered to issue. As far as the record shows, he is still at large. Four months thereafter, the surety noticed its motion to vacate the forfeiture and exonerate its bond. The motion was denied.

The thrust of the surety's argument is very straightforward. In direct terms, it is that there was a prior such order of forfeiture when the defendant was late for his first appearance in the superior court on December 19, 1978. He was due at 9 a.m. The case was again called; it was determined that defendant had been 30 minutes late because his trip to court required him to catch three buses and he had somehow miscalculated as to the time required; the court thereupon vacated the order forfeiting bail and ordered the bail reinstated. It is the contention of the appellant that liability on the bond was precluded as a matter of law exactly 30 days thereafter pursuant to section 1305 of the Penal Code; that for all practical purposes, defendant Mott was on his own recognizance from and after January 19th in that no proceedings affecting the bail could take place thereafter.

The basis for the contention is the requirement contained within section 1305, that upon the making of an order forfeiting bail "the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety....If the clerk fails to mail such notice within 30 days after such entry, the surety...shall be released from all obligations under the bond." There could be no question as to the applicability and effect of this legislative language, except for the fact that *due and proper notice of the forfeiture here involved was given*; in this instance, the surety is saying that it should be exonerated due to failure to notify as to the prior forfeiture, which order had been vacated shortly after it was made.

The basic scheme as to bail is almost absurdly simple. The defendant can post a sum of money with the court to be forfeited if he shall not

---

*Assigned by the Chairperson of the Judicial Council.

make himself available at all proper times in connection with the legal process. Very often he will seek out a bailbondsman, who posts an undertaking by means of which a corporate surety agrees to pay the set sum if defendant does not properly appear. The cash, the undertaking, and the bondsman himself are each referred to as bail (*Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827, 833 [300 P.2d 187]).

In operation, nothing occurs unless the defendant involved has *failed* to make an appearance at an appropriate time. In that event, it was the former practice to both forfeit bail and issue a bench warrant, thus bringing a number of factors into play. The bench warrant served to cause the police to seek for, and arrest, the missing defendant. The other main factor to be activated was the bail (here used to describe the person), who then had a period of six months within which to either (1) find, arrest and return the defendant to the jurisdiction of the court, or (2) show that the defendant was dead, or was unable to appear due to illness, insanity, or detention by civil or military authorities. In either such instance, the court could make such order as to the bail (here, of course, in the sense of monies) as justice required. If the defendant was not brought before the court within the six-month period, the order forfeiting bail was carried into execution, utilizing a summary judgment procedure.[1]

Essentially, that scheme obtains today, although the more recent amendments (1969) permit the court to continue the case without either forfeiting bail or issuing a bench warrant if it has reason to believe sufficient excuse may exist for the failure to appear. On the continued date, dependent upon the showing, it could make any appropriate order. (*People* v. *Surety Ins. Co.* (1976) 55 Cal.App.3d 197, 201 [127 Cal. Rptr. 451].) Conversely, unless the court involved has "reason to believe" sufficient excuse will be shown, it must follow the older practice of forfeiture as to bail and issuance of a bench warrant.

Returning then to our own area of concern, we had a situation in which a defendant on bail did not present himself in court on the date and at the time of his initial appearance. The only appropriate order

---

[1] The foregoing is meant to be no more than a generalized piece of the major functioning of the overall system under our statutes, without regard to numerous (and in other contexts important) details. There are a multitude of cases involving specific provisions and their operation, which need not be considered here. Essentially, the overall process is one more akin to an order to show cause than the summary forfeiture that the nomenclature denotes, and comports with due process throughout. (*People* v. *Surety Insurance Co.* (1978) 82 Cal.App.3d 229, 236-240 [147 Cal.Rptr. 65].)

was made, one forfeiting bail and ordering that a bench warrant issue, after twenty minutes had passed without appearance or any message from defendant or anyone on his behalf that might bespeak a possible excuse. The statutory mandate of section 1305 of the Penal Code was that "the clerk of the court shall, promptly upon entering the fact of such failure to ·appear in the minutes, mail notice of the forfeiture to the surety. . . and shall execute an affidavit of such mailing and place it in the court's file in the case." Thus, the Legislature has directed prompt notice to the surety in order that it may be made aware of the failure to appear and seek to return the defendant to the court, pursuant to the policy of expediting trials in criminal cases, and concomitantly protect itself with respect to forfeiture of monies. Thereafter, the section provides, where the clerk has been a great deal less than prompt in respect of the notification, that "[i]f the clerk fails to mail such notice within 30 days after such entry, the surety. . . shall be released from all obligations under the bond."

This is a coherent, cohesive, and coordinated statutory procedure, in which the rights and needs of all possible interested parties have been considered.

The public, the defendant and his surety, and the interest of the prosecution and the court find their expression within the statutory mode, but only if the legislative expression is read with all of these practical and legal considerations in mind.

■ Appellant contends for a literal reading of the statute, and backs that contention with a case which, despite its evident weaknesses,[2] is basically in point. (*People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 [119 Cal.Rptr. 917].) Thus, in this case, it is their position that the surety had to be notified that defendant had been 30 minutes late on December 19 and had been excused with respect thereto, *and that by January 19, he was free on his own recognizance* because the clerk had not notified the surety and thus that surety was "released from all obli-

---

[2]Apparently, this was one of those ill-starred cases, although decided by a careful and erudite court. Firstly, the appeal was dismissed as having been taken from a nonappealable judgment, and decided on the merits after rehearing was granted (*Wilshire* case at pp. 219-220). A prior nonappealed, appealable order denying vacation of the forfeiture was clearly involved, which might have been res judicata: the point is not even discussed. (See e.g., *Henn* v. *Henn* (1980) 26 Cal.3d 323, 331-332 and fn. 7 [161 Cal.Rptr. 502, 605 P.2d 10]; *Rosenthal* v. *Rosenthal* (1961) 197 Cal.App.2d 289, 296 [17 Cal.Rptr. 186].)

gations under the bond," well before February 1, the day upon and after which the defendant failed to appear for trial.

The notification as to the prior lateness would have served no purpose; the appearance of the defendant one-half hour after the time appointed was excused, and it was unnecessary either for the bench warrant to be actually issued or served, or for the surety to undertake to determine what had caused the failure to appear and take appropriate action to bring the defendant into court. The only effect of this interpretation of the legislative enactment is to excuse the surety from any liability on the bond, without its having done anything whatever to deserve same; and to render the order of the court on February 1 a nullity, although it was entered with due cause and at a time when the defendant, the bondsman, the surety, the prosecution and the court all reasonably believed the defendant to be free on bail.

This is an absurd result, not compelled by the language of the statute. On the contrary, it is far more reasonable to read the language as any ordinary reader would, namely that a failure to notify would preclude any liability on the bond, as to the act for which notification is necessary.

■ It is the prime purpose of the courts, in examining a statute, to ascertain and effectuate the legislative purpose; a statute will not be given an interpretation in conflict with its clear purpose, and general words used therein will be given a restricted meaning when reason and justice require it, rather than a literal meaning which would lead to an unjust and absurd consequence. (*County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259-260 [104 Cal.Rptr. 761, 502 P.2d 1049]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257]; *In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305].) Since we are bound to carry out the mandate of the legislative intent, and to follow the rules of construction and interpretation set forth in the cases, we must reject the construction sought by appellant, and that which seems to inhere in the *Wilshire Insurance* case.

Although proceedings with respect to bail are, very properly, ones which must be carefully followed in order to ensure due process (see

*People* v. *Surety Insurance Co.* (1978) 82 Cal.App.3d 229, 236 et seq. [147 Cal.Rptr. 65]), and the cases indicate that proper adherence to the statutory elements is "jurisdictional" (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 904 [98 Cal.Rptr. 57, 489 P.2d 1385]), proceedings relating to bail must be conducted, and the law relating thereto administered, with intelligent and observant response to the statutory scheme. It is not a slavish adherence to mere sham verbiage. Thus, it has been held that forfeiture was proper, where *no* notice had been given. In that case, *People* v. *Surety Ins. Co.* (1976) 55 Cal.App.3d 197, 202 [127 Cal.Rptr. 451], the surety had issued two bonds to aggregate the required sum of $25,000. The court ordered forfeiture of the "bail"; the clerk notified the surety with respect only to one bond, in the sum of $12,000. The appellate court found no difficulty in affirming the forfeiture of the entire amount, since one notification was sufficient for the split bond.

Similarly, this court carefully struck a balance, between reality and statutory language in *People* v. *Ramirez* (1976) 64 Cal.App.3d 391 [134 Cal.Rptr. 511], wherein we held that, although a surety was entitled to the full statutory period to apprehend and surrender an absconding defendant, it could not extend that period by filing a motion in the hope or expectation of apprehending that defendant after the statutory period had passed.

In the instant case, bail was ordered forfeited, statutory procedure observed, and the surety has no proper cause for complaint. The order is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied May 19, 1980, and appellant's petition for a hearing by the Supreme Court was denied June 19, 1980.