[Civ. No. 7565. Fifth Dist. Oct. 26, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
SURETY INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Jesse J. Avila and E. Alan Nunez for Defendant and Appellant.

Floyd R. B. Viau, County Counsel, and Paul Edmond Stephan, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**WOOLPERT, J.**— If a defendant misses a required appearance and appears later, after the court has ordered bail forfeited, can the judge effectively reinstate the bond and continue the defendant on the same bail without notice to the surety? Our answer is that it depends. On what? The timing.

If we seem to treat this appellate issue too lightly, in riddle form, we do so in the belief that the bail status of the defendant and his or her surety should not depend upon appellate ingenuity in applying general, "jurisdictional" legislation to practical courtroom events of a frequent nature. As we will point out, the inadequacy of the statute has resulted in appellant Surety Company asking us to reaffirm this court's prior decision which another court later, and unnecessarily, described as absurd.

Appellant (hereinafter Surety) posted a $5,000 bail bond to insure Elijio Ibarra's presence in this criminal action. On December 24, 1981, Ibarra failed to appear at his 9 a.m. trial confirmation conference. The clerk's minutes of that date (and time) recite: "No cause offered. Bond is forfeited Bench Warrant to issue No Bail. Trial date of 1/7/82 is vacated. Defendant appears late. Bench Warrant is recalled and bond is reinsta[t]ed

and Trial date of 1/7/82 is reinstated. Trial confirmation continue[d] to 12/29/81 @ 3:00 p.m. #13."

On December 29 Ibarra failed to appear when the continued trial confirmation conference was called. For our purposes he remains at large. Once again the court ordered the bond forfeited and a bench warrant to issue. Procedures were properly commenced pursuant to Penal Code section 1305.[1] A bench warrant was issued and on December 31 the clerk mailed notice of the forfeiture to Surety and its bail agent. However, only the failure to appear on December 29 was mentioned; no notice had been sent after the tardy appearance on December 24.

Six months later Surety moved to set aside the bond forfeiture, contending that the court lost jurisdiction on December 24 because the statute provided no authority for a reinstatement of bond without notice to the surety.

In its argument to the trial court Surety relied on this court's decision in *People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 [119 Cal.Rptr. 917] (hereinafter *Wilshire #1*), denying reinstatement jurisdiction in the absence of notice of the default which had been cured by the defendant's appearance on the day following the scheduled hearing. Instead, the trial court in this case referred to an apparently conflicting decision of another court, *People* v. *Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51 [164 Cal.Rptr. 159] (hereinafter *Amwest*). The *Amwest* decision holds that there is some continuing jurisdiction to vacate a bond forfeiture without notice to the surety. Because *Amwest* seemed to be "much more persuasive," the court below thought it should be followed even though from another district. Therefore, the trial court denied the motion of Surety to vacate the order forfeiting the bond upon Ibarra's failure to appear on December 29, 1981 (the second time).

Pursuant to section 1306 a summary judgment was entered against Surety for $5,000 principal plus interest and $86 costs. Surety appeals from the denial of its motion to vacate the summary judgment, asserting that *Wilshire #1* should be followed. In addition, an argument is made that costs cannot be awarded.

### The Bond Forfeiture

For the precise language of section 1305 we refer the reader to the five-paragraph statute. In essence its apparently mandatory language requires the court to declare bail forfeited and the clerk to enter that fact in the minutes

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

when the defendant fails to appear. "Promptly" thereafter the clerk must mail notice of the forfeiture to the surety and bail agent, except in the case of bonds of $100 or less. Alternatively, the court may continue the matter for a reasonable time, assuming the court has some basis to believe the defendant may yet appear and excuse the nonappearance.

If the court orders the bond forfeited, a failure of the clerk to mail the notices "within 30 days" after the minute entry releases the surety of all obligation under the bond. Within 180 days of the mailing of the notices the "defendant and his bail" may appear and present excuses for the defendant's nonappearance. A noticed hearing is required and the district attorney may oppose the discharge. The court has jurisdiction to make appropriate orders.

There are two *Wilshire* cases of the same name. In this court's *Wilshire #1* the defendant failed to appear for arraignment, whereupon the court ordered forfeiture of the bond and issued a bench warrant. At 9 a.m. *the next day* the defendant appeared and satisfactorily explained his absence. The order forfeiting bond was set aside and the bail was reinstated without the section 1305 notices. More than 30 days later defendant failed to appear for trial and bail was again forfeited. Our court found the failure to give the notice within 30 days after the first nonappearance was jurisdictional. Also, this court questioned the authority of a trial court to reinstate the bail upon its own motion, pointing out that the uninformed surety may be prevented from reconsidering its risk in view of the defendant's tendency not to appear. The reversal which concluded our opinion had the effect of exonerating the bail.

In *People* v. *Wilshire Ins. Co.* (1976) 61 Cal.App.3d 51 (hereinafter *Wilshire #2*), the question left open in *Wilshire #1* was answered by another appellate court. Once again a defendant had appeared one day late and made his excuses. Fortunately, the clerk sent out the required notice of forfeiture, leaving the issue whether the court could reinstate the defendant on bail "on the same bond" without the appearance and consent of the surety. The appellate court concluded the bond reinstatement after the one-day late appearance added no risk to the surety not already assumed when the bond was given. A change in statute after *Wilshire #1* appeared to permit this. Because notice of the original nonappearance was given in *Wilshire #2* the two cases are not in conflict.

A few years later the *Amwest* court was presented facts which it thought were similar to those in *Wilshire #1*. The court sought to reach a more intelligent conclusion. (*Amwest, supra,* 105 Cal.App.3d at p. 57.) The *Amwest* defendant failed to make a timely 9 a.m. appearance, arriving shortly

thereafter. He had an understandable Los Angeles excuse: he miscalculated his time because the trip to the courthouse required a ride on three different buses. As in *Wilshire #1*, at 9 a.m. when the defendant did not appear at the scheduled time, an order was made that bond be forfeited. Again, as in *Wilshire #1*, when the appearance was subsequently made, the satisfactory excuse resulted in the court vacating its prior forfeiture order without any notice being given the surety.

The *Amwest* court believed the section 1305 procedure to be "coherent, cohesive, and coordinated . . . ." (*Amwest, supra,* 105 Cal.App.3d at p. 55.) Disregarding the significance of the fact that the *Wilshire #1* tardy appearance was on the following day rather than the same day of the forfeiture order, the court observed that the usually "careful and erudite" *Wilshire #1* court had gone astray and reached an "absurd result, not compelled by the language of the statute." (*Id.,* at pp. 55, fn. 2, 56.) It concluded that a failure to notify the surety precludes liability on the bond only for the act concerned. Obviously, the defendant's late appearance causes no immediate loss to the surety if the court permits the criminal proceedings to go forward in due course. Inferentially, and irrespective of the timing, *Amwest* holds a subsequent appearance and unnoticed reinstatement of bond has no "jurisdictional" defect. To this extent *Wilshire #1* is in conflict with the *Amwest* rationale.

In retrospect, the dispositions in *Wilshire #1*, *Wilshire #2* and *Amwest* were consistent and proper if in each case ordinary courtroom clerical practice was followed. We return to *timing* and the relationship of the clerk's minutes to the judge's oral orders. By this approach we keep faith with the often stated rule expressed in *Wilshire #1* that when a statute requires a court to exercise its jurisdiction in a certain way or under certain restrictions, acts to the contrary or beyond those limits are in excess of the court's statutorily imposed jurisdiction.

In *Wilshire #1* the defendant appeared on the day following the oral order of the court that bond be forfeited. Presumptively, the clerk had entered the order in the permanent minutes. A jurisdictional, 30-day period followed within which the clerk was required to mail notices of forfeiture. Failure to do so released the surety of its bond obligations. In *Wilshire #2* the notices were mailed; no jurisdictional defect was present as the surety had notice of the one-day late appearance and could reassess its risk.

In *Amwest,* as well as in this case, the defendant arrived late on the same day. Presumptively the clerk had not yet entered in the minutes the order declaring the bond forfeited. (*People* v. *McAllister* (1940) 15 Cal.2d 519, 526-527 [102 P.2d 1072].)

██ It has long been held that oral orders made in court are subject to the plenary power of the court until "entered." (*Phillips* v. *Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926]; *Miller* v. *Stein* (1956) 145 Cal.App.2d 381, 384-385 [302 P.2d 403].) Unless the clerk prepares the "permanent minutes" in court when the oral orders are announced, the judge is free to make new and different orders so long as it is done before the court clerk or a minute clerk prepares the permanent minutes. The official "entry" is in the permanent minutes, not the rough minutes. (*People* v. *Black* (1961) 55 Cal.2d 275, 276-278 [10 Cal.Rptr. 459, 358 P.2d 915].)

██ Because of the jurisdictional nature of section 1305 the trial court must make appropriate orders on the nonappearance of a defendant; a presumption of insufficient excuse prevails until the court is informed otherwise. (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906-907 [98 Cal.Rptr. 57, 489 P.2d 1385].) Therefore, the court will lose jurisdiction to declare a bond forfeiture on any future nonappearance if it does not reasonably respond to the current nonappearance. (*Ibid.*) However, while the trial court remains in session or available during the day of the nonappearance, it will be presumed that its orders concerning bail forfeiture, including any changes, were all made prior to entry in the permanent minutes.

██ In this case no assertion has been made that the permanent minutes were prepared prior to the order reinstating bail on Surety's bond. In addition to the presumption that the permanent minutes were prepared no sooner than the end of the clerk's day in court, we have examined the minutes and find the orders were *typed* on a form in a continuous sequence, apparently at one sitting. The fact that the order of forfeiture appears prior to the order of reinstatement is of no consequence—the clerk merely recorded the orders in the sequence in which they were previously stated in open court, then temporarily noted them in the rough minutes. We assume the same courtroom practice took place in *Amwest.*

██ In summary, the jurisdictional question is resolved as follows:

(1) If the oral bail forfeiture order is noted by the clerk but not yet entered in the permanent minutes, the court has discretion to excuse a defendant's late appearance and reinstate bail as if it had never been forfeited, without any notice to the surety.

(2) If the defendant's appearance *follows* the entry in the permanent minutes of the order forfeiting bail, the court has jurisdiction to reconsider the order and reinstate bail on the same bond without notifying the surety of the court's intention or awaiting the appearance of the surety before doing

so, but only if the clerk complies with the jurisdictional formality of mailing the notices of the original forfeiture within 30 days of the entry in the permanent minutes of the pertinent facts.

COURT COSTS

█ Surety maintains the court erred in assessing costs because section 1306 only allowed a judgment for the amount of principal and did not provide for imposition of costs.

At the time the bond was ordered forfeited, section 1306 provided in relevant part as follows: "When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman has bound himself."

Effective in 1982 this sentence was added to section 1306: "In no event shall the judgment exceed the amount of the bond, with costs and notwithstanding any other provision of law, no penalty assessments shall be levied or added to the judgment."

Surety argues that after the amendment, section 1306 included costs as part of the judgment, and if the Legislature had intended to provide for costs prior to the amendment, it would have provided for them as it did in the 1981 amendment.

However, the Legislative Digest accompanying the 1981 amendment indicates its primary purpose was to proscribe penalty assessments in summary judgments entered after a bond forfeiture. Since the Legislative Digest did not expressly indicate costs were previously uncollectible, the People contend it cannot be said the Legislature spoke on this issue. We agree. The addition of the word "costs" was only clarification of existing law.

Under Government Code section 6103, state and local governmental entities are not required to pay filing fees. If one of these public agencies recovers a judgment, the judgment must include the amount of the filing fee and the amount of the fee for the service of process or notice which otherwise would have been paid. (Gov. Code, § 6103.5.) The filing fee is recoverable as costs whenever a judgment is granted pursuant to section 1306.

The judgment is affirmed.

Andreen, Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied November 23, 1983, and appellant's petition for a hearing by the Supreme Court was denied February 2, 1984.