Filed 5/25/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF LOS ANGELES, | B260373 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SJ3986) |
| v. | |
| FINANCIAL CASUALTY & SURETY, INC., | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County. Lisa B. Lench, Judge. Reversed and remanded with directions.

John M. Rorabaugh for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, Interim County Counsel, Ruben Baeza, Jr., Assistant County Counsel and Kevin Engelien, Associate County Counsel for Plaintiff and Respondent.

_____

The issue in this case is whether the trial court lost jurisdiction over a bail bond pursuant to the terms of Penal Code section 1305, subdivision (b)[1] when a bail forfeiture was declared in open court and set aside on the same day, and when the court clerk failed to mail notice of the forfeiture to the surety and bond agent. There is no cognizable exception, so the answer is yes. As a result, we conclude that the trial court erred when it denied the motion by Financial Casualty & Surety, Inc. (Financial Casualty) to vacate forfeiture and exonerate bond, and also when the trial court entered summary judgment in favor of the County of Los Angeles (County). The judgment is reversed and remanded with instructions for the trial court to set aside summary judgment, vacate the forfeiture and exonerate Financial Casualty's bond.

## FACTS

Damon Christoph Sandoval (Sandoval) was charged with unlawful possession of a controlled substance for sale (Health & Saf. Code, § 11352, subd. (a)), and unlawful transport, import, sale, administration or gift of a controlled substance (Health & Saf. Code, § 11351).

Bail was set at $100,000.

On August 23, 2011, Financial Casualty posted bond number FCS250-824686 for Sandoval's release from custody.

The information filed on December 13, 2011, added a third count for unlawful possession of a firearm by a felon (former § 12021, subd. (a)(1)), and a fourth count for unlawful possession of a controlled substance while armed (Health & Saf. Code, § 11370.1, subd. (a)).

Sandoval pleaded not guilty to each count.

On May 9, 2012, Sandoval withdrew his not guilty pleas, and pleaded no contest. He was convicted on all four counts. After admitting various special allegations, he pleaded open to the trial court. He was ordered to appear at a probation and sentencing hearing on August 9, 2012 at 8:30 a.m.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

On the morning of August 9, 2012, Sandoval was not present in court. At 10:05 a.m., the trial court ordered the bond forfeited and issued a bench warrant. Bail was set at "no bail." In the afternoon, Sandoval appeared and stated that he missed the morning hearing due to a doctor's appointment. The trial court said it was inclined to reinstate the bond and continued the matter to August 13, 2012. It then told Sandoval, "Have a seat. I'm going to make sure the bond agent is notified. Assuming notice is given, I'm going to reinstate your bond under [§ 1305, subd. (c)(4)]." After a break, the trial court stated, "Back on Mr. Sandoval's case. The bond agent has been notified pursuant to [§ 1305, subd. (c)(4)]. The bail forfeiture is set aside and the bond is reinstated." Sandoval was told to return to court on August 13, 2012.

The minute order from August 9, 2012, stated: "Bail forfeiture is set aside. [¶] Bond agent is notified via telephone of the court's intention to reinstate the bond pursuant to [§ 1305, subd. (c)(4)]. [¶] Matter is continued to [August 13, 2012] at 8:30 a.m."

At the next hearing, the trial court continued Sandoval's surrender date due to health reasons. Eventually, Sandoval had heart surgery.

He did not appear on January 15, 2013. The bond was ordered forfeited, and notice of forfeiture was mailed to Financial Casualty and the bond agent.

On July 18, 2014, Financial Casualty filed a motion to vacate forfeiture and exonerate bond on the theory that the trial court lost jurisdiction over the bond when it failed to mail notice of the August 9, 2012, forfeiture. Months later, the trial court denied the motion. It then entered summary judgment against Financial Casualty on the forfeited bond.

This timely appeal followed.

## DISCUSSION

The parties dispute whether the statutory scheme regarding bail bonds deprived the trial court of jurisdiction over the bond if it failed to provide Financial Casualty with written notice of the forfeiture declared on the morning of August 9, 2012. This raises a question of statutory interpretation subject to independent review. (*State ex rel. Bartlett v. Miller* (2016) 243 Cal.App.4th 1398, 1408.)

3

To resolve the issue presented, we must trace the history of the pivotal statute, section 1305, and then determine the meaning of its current incarnation.

In 1969, former section 1305 provided, in part, that if a defendant out on bail failed to appear when required, "the court must direct the fact to be entered upon its minutes and the undertaking of bail . . . must thereupon be declared forfeited[.]" If the forfeiture exceeded $50, the clerk of the court was required to mail notice to the surety and bond agent. If the clerk failed to mail the required notices within 30 days, the surety was released from its obligation on the bond. (Former § 1305, amended Stats. 1969, ch. 1259, § 6, pp. 2462-2463.) For our purposes, the substance of the former statute remained unchanged despite various amendments.

It is in the context of this former version of section 1305 that *County of Los Angeles v. Resolute Ins. Co.* (1972) 22 Cal.App.3d 961 was decided. There, the court held that the surety was released from its obligations under a bond because the court clerk mailed notice of forfeiture to a bond agent but not the surety. It noted that section 1305 required notice to both. (*County of Los Angeles v. Resolute Ins. Co., supra,* at pp. 962–964.)

In *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 (*Wilshire*), the defendant failed to appear at arraignment, which resulted in a bond forfeiture and a bench warrant. The next day, the defendant appeared and gave a satisfactory answer for his absence the day before. Consequently, forfeiture was set aside and the bond reinstated. The surety was not given notice of any of these proceedings. On appeal, the court observed that section 1305 required the clerk to mail notice within 30 days after entry of the forfeiture. Because statutory notice was not provided, the surety was released from its obligation. (*Wilshire*, *supra*, at p. 220.)

Half a decade later, the court in *People v. Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51 (*Amwest*) was confronted with the following scenario. The defendant was late to a hearing, so forfeiture was ordered. He appeared later that day and offered a satisfactory excuse, which caused the trial court to vacate the order forfeiting the bond, and to also order the bond reinstated. Subsequently, when the bond was again ordered

4

forfeited because the defendant did not appear for trial, the surety argued that the trial court lost jurisdiction over the bond because the court clerk did not mail notice of the first forfeiture, as required by section 1305.  (*Amwest*, *supra*, at p. 53.)

Amwest noted that *Wilshire*, "despite its evident weakness, is basically [o]n point," but then declined to follow *Wilshire*.  (*Amwest*, *supra*, 105 Cal.App.3d at p. 55, fn. omitted.)  The court found in favor of the People, stating:  "The notification as to the prior lateness would have served no purpose; the appearance of the defendant one-half hour after the time appointed was excused, and it was unnecessary either for the bench warrant to be actually issued or served, or for the surety to undertake to determine what had caused the failure to appear and take appropriate action to bring the defendant into court."  (*Amwest*, *supra*, 105 Cal.App.4th at p. 56.)

A few years later, along came *People v. Surety Ins. Co.* (1983) 148 Cal.App.3d 351, 354–355 (*Surety Insurance*), which concluded that *Wilshire* and *Amwest* were both correctly decided "if in each case ordinary courtroom clerical practice was followed." (*Surety Insurance*, *supra*, at p. 356.)

The *Surety Insurance* court presumed that in *Wilshire*, the order of forfeiture had been entered into the permanent minutes before the defendant appeared the following day.  Thus, the clerk was required to mail statutory notices.  But in *Amwest*, as in *Surety Insurance*, the defendant appeared the same day as the forfeiture and, "[p]resumptively[,] the clerk had not yet entered in the minutes the order declaring the bond forfeited. [Citation.]"  (*Surety Insurance*, *supra*, 148 Cal.App.3d at p. 356.)  This led the court to state:  "It has long been held that oral orders made in court are subject to the plenary power of the court until 'entered.'  [Citations.]  Unless the clerk prepares the 'permanent minutes' in court when the oral orders are announced, the judge is free to make new and different orders so long as it is done before the court clerk or a minute clerk prepares the permanent minutes.  The official 'entry' is in the permanent minutes, not the rough minutes.  [Citation.]"  (*Id*. at p. 357.)

In summary, the court stated:  "If the oral bail forfeiture order is noted by the clerk but not yet entered in the permanent minutes, the court has discretion to excuse a

defendant's late appearance and reinstate bail as if it had never been forfeited, without any notice to the surety. [¶] If the defendant's appearance *follows* the entry in the permanent minutes of the order forfeiting bail, the court has jurisdiction to reconsider the order and reinstate bail on the same bond without notifying the surety of the court's intention or awaiting the appearance of the surety before doing so, but only if the clerk complies with the jurisdictional formality of mailing the notices of the original forfeiture within 30 days of the entry in the permanent minutes of the pertinent facts." (*Surety Insurance*, *supra*, 148 Cal.App.3d at pp. 357–358.)

Section 1305 was repealed in 1993 (Stats. 1993, ch. 524, § 1, p. 2702) and replaced with a new version (Stats. 1993, ch. 524, § 2, p. 2702). It was amended in 1998. (Stats. 1998, ch. 223, § 2, p. 1070.)

When the Legislature amended section 1305, subdivision (a) in 1998, it clarified "the procedure for declaring a forfeiture by expressly requiring a court to declare a bail forfeiture in open court. [The new version of] [s]ection 1305, subdivision (a) . . . provide[d,] 'A court *shall in open court declare forfeited* the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for [a scheduled court appearance].'" (*People v. National Automobile & Casualty Ins. Co.* (2001) 98 Cal.App.4th 277, 282–283.)

The court in *County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488 (*County of Orange*) was confronted with the following fact pattern: the defendant failed to appear; his bond was declared forfeited; the clerk of the court did not mail notice to the surety; the defendant showed up two days later, and the trial court vacated the forfeiture and reinstated the bond; more than a year later, the defendant again failed to appear, which resulted in a forfeiture, the mailing of proper notices and, eventually, summary judgment. The court reversed because the trial court failed to give the required notice to the surety after the first forfeiture was declared. (*Id.* at pp. 1490–1491.) *County of Orange* pointed out that the "purpose of notice is to alert 'the surety when its bond is in danger of being forfeited, so it can choose to act one way or another.' [Citation.] The statute places the burden of mailing notice of forfeiture on the only

6

neutral party involved, the court itself. [Citation.]" (*Id*. at p. 1492.) Further according to *County of Orange*, section 1305 is a jurisdictional prescription, and a trial court's failure to follow that jurisdictional prescription renders a summary judgment on the bail bond void. (*County of Orange,* at pp. 1492–1493.)

The *County of Orange* court rejected the county's reliance on *Amwest*, stating: "[W]e do not agree that when a forfeiture has been declared, 'notification as to the prior lateness would have served no purpose. . . .' [Citation.] As discussed, the purpose of notice is to alert the surety of the danger to its bond, 'so it can choose to act one way or another.' [Citation.] On this ground, we decline to follow *Amwest*. [¶] *Amwest* criticized [*Wilshire*], but we find the latter case directly on point and persuasive. . . . The appellate court [stated]: '[W]e perceive no escape from the conclusion that the failure to give the notice of the forfeiture invalidated the bond and rendered the judgment based thereon void.' [Citation.] . . . *Amwest* discerned 'no purpose' in this holding [citation], apparently overlooking the *Wilshire* court's explanation: 'The real point is that by the failure to receive notice the surety was deprived of the opportunity to consider all factors potentially producing an increased risk, which opportunity the statute apparently intended to assure.' [Citation.] We agree with *Wilshire*'s interpretation of section 1305." (*County of Orange*, *supra*, 140 Cal.App.4th at pp. 1495–1496.)

In 2007, our Supreme Court issued *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704 (*Allegheny Casualty*) and held that a trial court's declaration of a bond forfeiture in open court is effective even if it was not reflected in the reporter's transcript or the trial court's minutes. (*Id*. at pp. 706–707.)

Section 1305 was amended again in 2012. The current version provides: "(a) A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] (1) Arraignment. [¶] (2) Trial. [¶] (3) Judgment. [¶] (4) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required. [¶] . . . [¶] (b) If the amount of the bond or money or property deposited exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days

7

of the forfeiture, mail notice of the forfeiture to the surety or the depositor of money posted instead of bail. At the same time, the court shall mail a copy of the forfeiture notice to the bail agent whose name appears on the bond. The clerk shall also execute a certificate of mailing of the forfeiture notice and shall place the certificate in the court's file. . . . [¶] If the surety is an authorized corporate surety, and if the bond plainly displays the mailing address of the corporate surety and the bail agent, then notice of the forfeiture shall be mailed to the surety at that address and to the bail agent, and mailing alone to the surety or the bail agent shall not constitute compliance with this section. The surety or depositor shall be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails to mail the notice of forfeiture to the surety at the address printed on the bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond." (§ 1305, subds. (a) & (b).)

Despite all the foregoing, case law does admit a limited, actual notice exception to the rule that the trial court loses jurisdiction over a bond based on lack of requisite notice. "Because 'the statute's goal [is] effective notice' [citation], when the surety receives actual notice despite a technical mistake by the court clerk, forfeiture of the bond will stand if neither the surety nor bondsman produces the defendant. [Citations.]" (*County of Orange*, *supra*, 140 Cal.App.4th at p. 1493; *People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1295, overruled on other grounds in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120; *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1385)

We now turn to the merits of the appeal.

The County urges us to apply *Surety Insurance* and conclude that the trial court was not required to send notice of the first forfeiture because the order was never entered into the permanent minutes. We decline.

Due to the changes in section 1305, *Surety Insurance* has essentially been superseded by statute. Stated another way, it did not consider the 1998 amendment and

8

has no precedential value regarding the effect of a trial court's declaration of a forfeiture in open court, and whether that declaration then triggered the obligation to send out notices of the forfeiture. (*People v. Braxton* (2004) 34 Cal.4th 798, 819 ["an appellate court's opinion is not authority for propositions the court did not consider or on questions it never decided"].)

In our view, the language of section 1305, subdivision (b) is inescapable. The triggering event for the notice requirement is a trial court's declaration of forfeiture in open court. Consequently, once a forfeiture is declared in open court, the clerk must mail notice to the surety and bond agent within 30 days or the trial court loses jurisdiction over the bond. It is no longer true that the entry of the forfeiture in the minutes is the event that obligates a clerk to send notice, as was true when *Wilshire*, *Amwest* and *Surety Insurance* were decided. Thus, because the trial court did not mail notice after the first forfeiture was declared in open court, it lost jurisdiction over the bond. It should have granted Financial Casualty's motion to vacate the forfeiture and exonerate the bond, and it should have vacated summary judgment.

According to the County, mailing notice would have been pointless because the court clerk called Financial Casualty. Impliedly, the County suggests that the actual notice exception should apply. But the record indicates that the court clerk called the bond agent, not Financial Casualty, to communicate the trial court's intention to reinstate the bond. There is no evidence that the bond agent informed Financial Casualty and gave it actual notice of the forfeiture.

9

## DISPOSITION

The order and summary judgment are reversed. The case is remanded to the trial court with directions to vacate the forfeiture and exonerate the bond. Financial Casualty is entitled to recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**.

_____, Acting P. J.
         ASHMANN-GERST

We concur:

_____, J.
         CHAVEZ

_____, J.
         HOFFSTADT