Mihara, J., dissenting.
I do not agree with my colleagues that the case before us may be meaningfully distinguished from County of Los Angeles v. Financial Casualty & Surety, Inc. (2016) 247 Cal.App.4th 875, 202 Cal.Rptr.3d 380 ( Financial Casualty ). In my view, Penal Code section 1305[1] required the superior court to send notice to the surety within 30 days after it declared a forfeiture in open court on July 19, 2016. Because it failed to do so, the court lacked jurisdiction to subsequently declare a forfeiture.
I. Facts
On June 3, 2016, criminal defendant Manuel Gheeraert was arraigned, the public defender was appointed to represent him, and his bail was set at $25,000. He was ordered to appear in court for a hearing on June 13 at 1:30 p.m. Bankers Insurance Company (Bankers) issued a bail bond on June 3, and Gheeraert was released from custody.
Gheeraert failed to appear as ordered on June 13, 2016, the bail was ordered forfeited, and a bench warrant was issued. On June 22, Gheeraert appeared in court with attorney Richard Weese, who substituted in as Gheeraert's counsel of record. Weese explained that he had mistakenly failed to appear on Gheeraert's behalf at the June 13 hearing, presented the court with a "letter of reassumption" from Bankers, and asked the court to recall the warrant. The court set aside the forfeiture, accepted the letter, reinstated bail, and recalled the warrant. In the presence of both Gheeraert and Weese, the court set the next hearing for July 19 at 1:30 p.m.
On July 19, 2016, neither Gheeraert nor Weese appeared at 1:30 p.m. The court called the case and noted that neither Gheeraert nor Weese was *553 present:[2] "Line Item 14, Manuel Gheeraert. [¶] No defendant; no attorney. [¶] Bench warrant, 7500. [¶] The bail forfeiture -- bail is forfeited. [¶] Bench warrant issued ...." At 3:40 p.m., according to the transcript, the court noted that Weese "walked in" and told the court that "he called, and he didn't leave his name. So we didn't know who it was that called. He said he would be here in a while, 45 minutes. As a result, five minutes ago, I issued warrants on four matters that were all Mr. Weese's. [¶] Now that Mr. Weese has appeared, in each of these *550 matters, starting with line 7, the bench warrant issued is recalled. [¶] As to line item 14, the bail forfeiture is set aside. The bench warrant is recalled. The bond issued is reinstated since we never sent notice out ... no fault of the defendant's and no costs."
On August 18, 2016, Weese appeared on defendant's behalf for a pretrial hearing. At Weese's request, the matter was continued to September 27. On September 27, the matter was continued to October 25, again at Weese's request, and defendant was ordered to appear on October 25. On October 25, neither Weese nor Gheeraert appeared, and the court ordered the bail forfeited and issued a bench warrant. The clerk sent notice on October 26 to Bankers of the October 25 forfeiture.
In May 2017, Bankers filed a motion to vacate the forfeiture and exonerate the bond. It argued that under section 1305, subdivision (b) the court had lost jurisdiction over the bond because it failed to give notice to Bankers of the July 19 forfeiture. On December 20, after many continuances, the court denied Bankers's motion. It reasoned that "while court is still in session ... [and] the court session has not concluded ... the forfeiture and the bench warrant and failure to appear are not effective at the moment of the judge saying it outloud but at the end of the session. I understand that the case law might indicate otherwise. I understand the 6th District might indicate when you appeal it." "I believe the law is different for one session." On December 26 the court entered summary judgment on the bond. Bankers timely filed a notice of appeal.
II. Discussion
My colleagues conclude that no notice was required to be sent in this case because, during the "same court session," the court vacated the forfeiture that it had declared. The statutory scheme, which my colleagues admit we are required to "strictly" construe, does not allow for a "same court session" exception to the requirement that a notice be sent upon a declaration of *554 forfeiture. (Maj. opn., ante , at pp. 545-46, 547.) Despite my colleagues' attempts to characterize the superior court's July 19, 2016 action declaring a forfeiture as a "mistake" and to deem that forfeiture declaration "erroneous," the superior court acted in full conformance with its statutory obligations when it declared a forfeiture after defendant and his attorney both failed to appear without any excuse at the scheduled time. (Maj. opn., ante , at p. 547.) The court's error was in failing to send the statutorily required notice of this forfeiture, which resulted in the court's lack of jurisdiction to subsequently declare a forfeiture.
A. Statutory and Case Authority
"A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] ... [¶] (D) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required." ( § 1305, subd. (a)(1).) "If the amount of the bond or money or property deposited exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety or the depositor of money posted instead of bail. At the same time, the court shall mail a copy of the forfeiture notice to the bail agent whose name appears on the bond. [¶] ... [¶] (3) The surety or depositor shall be released of all obligations under the bond if any of the following conditions apply: [¶] (A) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days *551 after the entry of the forfeiture."[3] ( § 1305, subd. (b).)
The issue before us in this case is not one of first impression. In Financial Casualty , the issue before the Second District Court of Appeal was "whether the trial court lost jurisdiction over a bail bond pursuant to the terms of Penal Code section 1305, subdivision (b) when a bail forfeiture was declared in open court and set aside on the same day, and when the court clerk failed to mail notice of the forfeiture to the surety and bond agent." ( Financial Casualty , supra , 247 Cal.App.4th at p. 877, 202 Cal.Rptr.3d 380, fn. omitted.) Even though Financial Casualty addressed the same issue that is before us in this case, my colleagues try to distinguish Financial Casualty on the ground that it involved a forfeiture declared in the morning and a vacating of that forfeiture in the afternoon, while the case before us involves a forfeiture declared in the afternoon and vacated later in the afternoon. But this factual difference is legally irrelevant.
*555 In Financial Casualty , the criminal defendant had been ordered to appear at 8:30 a.m. on August 9, 2012. He failed to appear, and the court ordered bail forfeited at 10:05 a.m. ( Financial Casualty , supra , 247 Cal.App.4th at p. 877, 202 Cal.Rptr.3d 380.) The criminal defendant appeared that afternoon and offered an excuse for his absence that morning. The court notified the bond agent (but not the surety) by telephone that it intended to reinstate the bond, and it then set aside the forfeiture and reinstated the bond. The clerk did not send a notice of forfeiture to the surety. ( Id. at pp. 877-878, 202 Cal.Rptr.3d 380.) The criminal defendant failed to appear at a subsequent hearing, and the court ordered the bail forfeited. The clerk then sent a notice of forfeiture to the surety. ( Id. at p. 878, 202 Cal.Rptr.3d 380.) The surety sought to vacate the forfeiture and exonerate the bond on the ground that the court had lost jurisdiction over the bond when the clerk failed to send notice of forfeiture to the surety within 30 days of the August 9 forfeiture. The trial court denied the motion and entered summary judgment on the bond. ( Ibid. )
The Second District concluded that the court had lost jurisdiction because it had failed to send notice of the August 9 forfeiture to the surety. The Second District highlighted the legislative history of section 1305. ( Financial Casualty , supra , 247 Cal.App.4th at pp. 878-879, 202 Cal.Rptr.3d 380.) Until 1993, section 1305 provided that if the criminal defendant failed to appear without sufficient excuse, "the court must direct the fact to be entered upon its minutes and [the bail] ... must thereupon be declared forfeited, and ... the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety ...." (Stats. 1979, ch. 873, § 10.5, p. 3041.) Thus, under the pre-1993 version of section 1305, the event that triggered the notice requirement was the entry of the forfeiture in the clerk's minutes.
The 1993 changes to section 1305 came in the wake of a series of conflicting cases concerning the notice requirement. In People v. Wilshire Ins. Co. (1975) 46 Cal.App.3d 216, 119 Cal.Rptr. 917 ( Wilshire ), the criminal defendant failed to appear on November 29, 1971, and the court ordered the bond forfeited. The next morning, the criminal defendant appeared and offered an explanation for his absence. The court *552 ordered the forfeiture set aside and reinstated bail without notifying the surety. After the criminal defendant failed to appear at a subsequent hearing and the court ordered the bail forfeited, the surety challenged the forfeiture on the ground that the court had lost jurisdiction due to the failure to send the required notice. ( Wilshire , at pp. 218-219, 119 Cal.Rptr. 917.) The Fifth District overturned the forfeiture: "[W]e perceive no escape from the conclusion that the failure to give the notice of the forfeiture invalidated the bond and rendered the judgment based thereon void." ( Wilshire , at p. 221, 119 Cal.Rptr. 917.) *556 A contrary result was reached in People v. Amwest Surety Insurance Co. (1980) 105 Cal.App.3d 51, 164 Cal.Rptr. 159 ( Amwest ). The criminal defendant in Amwest failed to appear at 9:00 a.m. on December 19, 1978, and the court ordered the bail forfeited. Thirty minutes later, the criminal defendant appeared and offered an excuse for his tardiness. ( Amwest , at p. 53, 164 Cal.Rptr. 159.) The court vacated the forfeiture and reinstated the bail, but it did not send notice of the forfeiture to the surety. ( Ibid. ) After a subsequent bail forfeiture, the surety sought to exonerate the bond because the court had lost jurisdiction by failing to send notice to the surety of the earlier forfeiture. Although the Second District acknowledged that Wilshire was "basically in point," it deemed the result required by Wilshire "absurd," refused to apply it, and upheld the bail forfeiture. ( Amwest , at pp. 55-56, 164 Cal.Rptr. 159.)
The Fifth District attempted to reconcile Amwest and Wilshire in People v. Surety Ins. Co. (1983) 148 Cal.App.3d 351, 195 Cal.Rptr. 876 ( Surety ). In Surety , the criminal defendant failed to appear at a 9:00 a.m. hearing on December 24, 1981. The clerk's minutes stated that the bond was forfeited, the defendant "appear[ed] late," and the bond was then reinstated. On December 29, the criminal defendant failed to appear, the bond was forfeited, and the clerk sent notice to the surety of the December 29 forfeiture. ( Surety , at pp. 353-354, 195 Cal.Rptr. 876.) The Fifth District expressed concern about what it deemed "the inadequacy of the statute ...." ( Surety , at p. 353, 195 Cal.Rptr. 876.) The Fifth District believed that the contrary results in Wilshire and Amwest "were consistent and proper if in each case ordinary courtroom clerical practice was followed. We return to timing and the relationship of the clerk's minutes to the judge's oral orders. By this approach we keep faith with the often stated rule expressed in [ Wilshire ] that when a statute requires a court to exercise its jurisdiction in a certain way or under certain restrictions, acts to the contrary or beyond those limits are in excess of the court's statutorily imposed jurisdiction." ( Surety , at p. 356, 195 Cal.Rptr. 876.) "Presumptively the clerk [in Wilshire ] had entered the order in the permanent minutes," while "[p]resumptively the clerk [in Amwest ] had not yet entered in the minutes the order declaring the bond forfeited." ( Surety , at p. 356, 195 Cal.Rptr. 876.)
The Fifth District's reasoning depended on its belief that a bail forfeiture was not effective until it was entered in the clerk's minutes (plus its post hoc hypothesis about the facts of Wilshire and Amwest ). It reasoned: "It has long been held that oral orders made in court are subject to the plenary power of the court until 'entered.' [Citations.] Unless the clerk prepares the 'permanent minutes' in court when the oral orders are announced, the judge is free to make new and different orders so long as it is done before the court clerk or a minute clerk prepares the permanent minutes. The official 'entry' is in the permanent minutes, not the rough minutes. [Citation.
*553 ]" (Surety , supra , 148 Cal.App.3d at p. 357, 195 Cal.Rptr. 876.) "[W]hile the trial court remains in session or available during the day of the nonappearance, it will be presumed that its orders *557 concerning bail forfeiture, including any changes, were all made prior to entry in the permanent minutes." ( Ibid. ) The Fifth District concluded that the clerk had not yet entered the forfeiture in the permanent minutes when the defendant appeared and the forfeiture was vacated, so it held that the court retained jurisdiction over the bond. ( Ibid. )
The pre-1993 version of section 1305 that was in force at the time of Wilshire , Amwest , and Surety was repealed in 1993 and replaced with a new section 1305 that contained the same language as the current version except that it did not include the words "in open court." (Stats. 1993, ch. 524, § 1 ["A court shall declare forfeited ...."].) This legislative change eliminated the multiple references in the pre-1993 version of section 1305 to the clerk's minutes. The pre-1993 version had required the forfeiture "to be entered upon its minutes" and identified the event that triggered the notice requirement as the clerk's "entering the fact of such failure to appear in the minutes ...." (Stats. 1979, ch. 873, § 10.5, p. 3041.) By enacting the 1993 version of section 1305, the Legislature shifted the triggering event from the clerk's entry of the forfeiture in the minutes to the court's declaration of the forfeiture.
The 1998 amendment of section 1305 confirmed this shift when it added the "in open court" language to the statute. (Stats. 1998, ch. 223, § 2.) The 1998 amendment was sought by sureties and opposed by the Judicial Council. The legislative history of the 1998 amendment reveals that it was intended to provide more prompt notice to the surety. "This bill requires that the declaration of forfeiture be made in open court at the time the defendant fails to appear and a bench warrant is issued. This is a minor technical change to existing law and only requires the court to openly order forfeiture of the bail - the rationale being that the bail agent receives notice of the forfeiture at the time, rather than when the notice is sent and is able to immediately pursue the fugitive. Despite Judicial Council's objection, this requirement places an insignificant burden on the court as it only requires the court to state 'bail is forfeited'. It is a better practice to openly declare the forfeiture (most courts already follow this procedure) ...." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2083 (1997-1998 Reg. Sess.) May 5, 1998; see People v. Allegheny Casualty Co. (2007) 41 Cal.4th 704, 711-712, 61 Cal.Rptr.3d 689, 161 P.3d 198 [discussing this legislative history].) " 'The court is presently required to declare forfeited the undertaking of bail, if without excuse, the defendant fails to appear in court. Often the bond is not declared forfeited in open court; rather it is declared forfeited days or weeks later by a clerk of the court. By delaying the declaration, the defendant has an opportunity to flee and avoid apprehension.' " ( Ibid. ) The 1993 enactment of the new version of section 1305 and the 1998 amendment of it were clearly intended to make a bail forfeiture fully effective for *558 purposes of requiring notice to the surety upon declaration by the court, rather than upon entry of the forfeiture in the clerk's minutes. These statutory changes eliminated the foundation for Amwest and Surety.
No subsequent case has resurrected the Amwest and Surety analyses that were implicitly rejected by the Legislature in 1993 and 1998. In County of Orange v. Lexington Nat. Ins. Corp. (2006) 140 Cal.App.4th 1488, 45 Cal.Rptr.3d 543 ( Lexington ), the criminal defendant failed to appear on March 25, 2003, and the court *554 declared a forfeiture in open court. The clerk did not send notice to the surety of the forfeiture. Two days later, the criminal defendant appeared and filed a document signed by the bail agent stating that the surety would reassume the bond upon the court's reinstatement of bail. The court vacated the forfeiture and reinstated bail. Much later, the criminal defendant failed to appear at a hearing, and the court ordered the bail forfeited. ( Lexington , at p. 1491, 45 Cal.Rptr.3d 543.) The Fourth District observed that "[n]otice pursuant to section 1305 enables the surety to decide whether to continue to risk funds on a defendant who has failed to appear" and held that the court lost jurisdiction when the clerk failed to send notice to the surety of the March 25 forfeiture. ( Lexington , at p. 1494, 45 Cal.Rptr.3d 543.) The court criticized Amwest , declined to follow it, and followed Wilshire. ( Lexington , at pp. 1495-1496, 45 Cal.Rptr.3d 543.)
B. Application to this Case
The legislative history of section 1305 is completely inconsistent with the trial court's approach in this case. The Legislature's repeal of the pre-1993 version of section 1305, enactment of the 1993 version of section 1305, and 1998 amendment of that statute replaced the language referencing the clerk's entry of the forfeiture in the minutes with language explicitly establishing that a forfeiture occurs when the court declares it in open court. These actions were intended to provide more timely notice to sureties by decoupling the forfeiture from the entry in the minutes. By doing so, the Legislature clearly expressed its intent that a forfeiture be effective at the moment it is declared in open court, rather than when the clerk enters the forfeiture in the minutes. It follows that the court's forfeiture in this case was effective the moment it was declared and therefore triggered the requirement for notice to the surety. The clerk's failure to provide that notice released Bankers from the bond. I agree with Financial Casualty , and I do not agree with my colleagues' attempt to reengraft the approach of Amwest and Surety onto the current version of section 1305, which was plainly intended to reject that approach.
My colleagues assert that the superior court "erroneously declared" an "erroneous" forfeiture when defendant and his attorney failed to appear as ordered at 1:30 p.m. on July 19, 2016. (Maj. opn., ante , at p. 547.) Not true. When defendant and his attorney both failed to appear at the appointed *559 time or to offer any excuse at that time for their nonappearance, the superior court was statutorily obligated to declare a forfeiture. Nothing about the court's forfeiture declaration at that time was "erroneous." (Ibid. ) To try to support their inaccurate characterization of the court's forfeiture declaration, my colleagues claim that "the court was not informed" that defendant's attorney had called to say he would be late. (Id. at pp. 547-48.) The record reflects that defendant's attorney did not identify himself when he called the court, so there was no mistake by the court (or its staff). My colleagues also assert that "the trial court concluded that defendant had in fact appeared through counsel" and that "defendant in fact appeared as required on July 16." (Ibid. ) While defendant's counsel belatedly appeared and offered an excuse that the court decided to accept, neither of them appeared "as required" because the hearing was scheduled for 1:30 p.m., not more than two hours later when defendant's counsel arrived. Though my colleagues dismiss as pointless any notice to Bankers of this nonappearance, had Bankers been given notice of this event, as required by statute, it would have had the opportunity to reassess the risk of defendant's *555 future nonappearance in light of this second event of nonappearance, which made both defendant and his attorney appear unreliable.
While I agree with my colleagues that "a line must be drawn," that line was drawn by the Legislature when it changed section 1305 in 1993 and 1998, and we are not free to adjust that line as we deem appropriate. (Maj. opn., ante , at pp. 548-49.) We are not permitted to add a "same court session" exception to the plain language of section 1305, as enacted and amended by the Legislature, which we are bound to "strictly" construe. I dissent because I cannot join a holding that disregards the rules that govern our strict construction of an unambiguous statute.

Subsequent statutory references are to the Penal Code.

The transcript states that it is from the "A.M. Session," but the court's remarks at 3:40 p.m. reflect that it is actually from the afternoon session. Everyone agreed below that the transcript is actually from the afternoon session.

Section 1305 was amended in 2016, but none of this language was altered. (Stats. 2016, ch. 79, § 1; Stats. 2012, ch. 129, § 1.)