Filed 6/19/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H045635 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1639029) |
| v. | |
| BANKERS INSURANCE COMPANY, | |
| Defendant and Appellant. | |


Bankers Insurance Company (Bankers) appeals from an order denying its motion to set aside forfeiture of a bail bond and to exonerate bail. Bankers contends that the trial court lost jurisdiction over the bond pursuant to Penal Code section 1305, subdivision (b)[1] when the trial court in open court forfeited a bail bond but reinstated it five minutes later and did not send a notice of forfeiture to the surety.

We conclude that, under these circumstances, the trial court retained jurisdiction over the bail bond.

## I.  FACTS AND PROCEDURAL BACKGROUND

On June 3, 2016,[2] Le Bail Bonds, an agent of Bankers, posted a $25,000 bail bond for the defendant whose bail bond is at issue here for a number of misdemeanor charges.

---

[1] All further unspecified references are to the Penal Code.

[2] Unless otherwise stated, all dates referenced in this section occurred in 2016.

On June 22, the defendant appeared with his attorney before the trial court, and the trial court gave him a court date of July 19, at 1:30 p.m.

On July 19, during the afternoon session, the trial court stated on the record "let the record reflect that [defense counsel] just walked in at 3:40. He indicates that he called, and he didn't leave his name. So we didn't know who it was that called. He said he would be here in a while, 45 minutes. As a result, five minutes ago, I issued warrants on four matters that were all [defense counsel]'s. [¶] Now that [defense counsel] has appeared, in each of these matters, starting with line 7, the bench warrant issued is recalled. [¶] As to line item 14, the bail forfeiture is set aside. The bench warrant is recalled. The bond is reinstated since we never sent notice out—(inaudible)—no fault of the defendant's and no costs."

The box on the minute order for "Bail Forfeited" appears to have been checked and then crossed out. There are no notations on the minute order suggesting that the order was corrected at a later date, and the parties assume (as do we) that the courtroom clerk crossed out the bail forfeiture notation before the afternoon court session had terminated. The minute order also indicates that, on July 19, the trial court gave the defendant a new court date and did not order a bench warrant for the defendant.

On October 25, neither the defendant nor his attorney appeared for a court date. The trial court forfeited the bail bond, and the clerk mailed a notice of bail forfeiture the following day.

On May 26, 2017, Bankers filed a motion to vacate the bond forfeiture and exonerate the bail bond based on the clerk's failure to mail a notice of bail bond forfeiture following the July 19 hearing. The People opposed the motion. On December 20, 2017, the trial court held a hearing on Bankers's motion. After reviewing the legal authorities cited by Bankers, the trial court stated, "if [the forfeiture] is within the same session, the court has the power to take it back, take the forfeiture back." The trial court reasoned that "the forfeiture and the bench warrant and failure to appear are not effective at the

2

moment of the judge saying it out loud but at the end of the session." The trial court concluded that it did not lose jurisdiction over the bond when the clerk did not mail a notice of forfeiture based on the proceedings at the July 19 court date, and it denied Bankers's motion to vacate the forfeiture. The trial court later entered judgment against Bankers, and Bankers timely appealed.

## II. DISCUSSION

Bankers argues that the judgment should be reversed because it was released of its obligations under the bond when the trial court did not mail Bankers notice of the July 19 forfeiture that the trial court "declared in open court."

A. *Standard of Review*

While a reviewing court ordinarily assesses the trial court's denial of a motion to vacate an order of forfeiture under an abuse of discretion standard (*People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 127, 134 (*Financial Casualty*)), here the "evidence before the appellate court is not in dispute" and we therefore employ de novo review. (*People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919 (*Amwest Surety*).) The party challenging the order carries the burden of establishing error. (*Financial Casualty*, at p. 134.)

B. *General Principles*

Under section 1305, subdivision (a)(1), "[w]hen a defendant facing criminal charges is released on bail and fails to appear as ordered or as otherwise required and does not have a sufficient excuse, a trial court must declare the bail bond forfeited."[3] (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 707.) Section 1305,

---

[3] Section 1305, subdivision (a)(1) states: "A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] (A) Arraignment. [¶] (B) Trial. [¶] (C) Judgment. [¶] (D) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required. [¶] (E) To surrender himself or herself in execution of the judgment after appeal."

subdivision (b)(1) requires, "If the amount of the bond or money or property deposited exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety." This "notice must be sent both to the surety and to the bail agent." (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1385 (*Ranger*). If the clerk fails to mail the notice of forfeiture "in accordance with [section 1305] within 30 days after the entry of the forfeiture," then "[t]he surety or depositor shall be released of all obligations under the bond." (§ 1305, subd. (b)(3).)

Section 1305 is "subject to precise and strict construction" (*Amwest Surety*, *supra*, 56 Cal.App.4th at p. 921, internal quotation marks omitted), and a trial court must "carefully follow [the statute] or its acts may be found to be without, or in excess of, its jurisdiction." (*Financial Casualty, supra*, 14 Cal.App.5th at p. 133.)

C. *Analysis*

The question posed here is whether the clerk's duty to mail the notice of forfeiture was triggered by the trial court's initial forfeiture of the bail bond even though the trial court reinstated the bail bond during the same court session. In arguing that the clerk was obligated to do so but did not, thereby absolving Bankers of its obligations under the bond, Bankers relies primarily on *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2016) 247 Cal.App.4th 875, 883 (*County of Los Angeles*). In that case, the court found that a trial court's forfeiture of a bail bond at a morning court session at which the defendant failed to appear triggered section 1305, subdivision (b)'s mailing requirement of the notice of forfeiture, even though the defendant appeared in court that afternoon explaining that he had had a doctor's appointment in the morning, the court telephoned the bond agent (presumably to give notice of the defendant's failure to appear that morning and to see whether it should reinstate the bond), and then set aside the forfeiture. (*Id.* at pp. 877–878.)

The Court of Appeal in *County of Los Angeles* stated, "In our view, the language of section 1305, subdivision (b) is inescapable. The triggering event for the notice

4

requirement is a trial court's declaration of forfeiture in open court. Consequently, once a forfeiture is declared in open court, the clerk must mail notice to the surety and bond agent within 30 days or the trial court loses jurisdiction over the bond. It is no longer true that the entry of the forfeiture in the minutes is the event that obligates a clerk to send notice, as was true when *Wilshire*, *Amwest* and *Surety Insurance* were decided. Thus, because the trial court did not mail notice after the first forfeiture was declared in open court, it lost jurisdiction over the bond." (*County of Los Angeles*, *supra*, 247 Cal.App.4th at p. 883.) The court did not find the actual notice provided to the bond agent sufficient to excuse the clerk's failure to send the notice because there was no evidence that the court (or the bond agent) provided actual notice to the surety. (*Id*. at p. 883; § 1305, subd. (b)(1).)

Bankers seizes on the statement in *County of Los Angeles* "once a forfeiture is declared in open court, the clerk must mail notice to the surety and bond agent within 30 days or the trial court loses jurisdiction over the bond," (*County of Los Angeles*, *supra*, 247 Cal.App.4th at p. 883), and asserts that, as soon as the trial court in open court states that the bail bond is forfeited, then the clerk must mail a notice of forfeiture in every case.

Bankers does not challenge the trial court's reinstatement of the bail bond here. Instead, Bankers argues that once a trial court declares in open court that the bail bond is forfeited, the clerk must always mail a notice of forfeiture to the surety even if the trial court properly reinstates the bail bond within that same court session. Although the defendant's court appearance would have started and ended with the bail bond in place, the clerk must still (according to Bankers) mail a notice of forfeiture because the bail bond was forfeited in open court and remained in forfeited status for a few minutes.

We recognize that section 1305 must be read strictly, and reviewing courts interpreting the provision have given trial courts little latitude to deviate from its requirements. (See, e.g., *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 220–221;

5

*County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488, 1495–1496 (*County of Orange*).) In this case, however, Bankers's interpretation goes too far.

Bankers cites to no case stating that, within a single court session, a court cannot correct the erroneous forfeiture of a bail bond without also mailing a notice of forfeiture. Bankers's proposed rule would prevent a trial court from correcting any mistake it might have made when forfeiting a bail bond without providing the surety notice of the now-corrected forfeiture. For example, a trial court might erroneously forfeit a bail bond in a case in which a defendant (or defense counsel, in a misdemeanor case) is present in court but outside in the hallway when a case is called. When the defendant and counsel reenter the courtroom, even if the trial court immediately corrects its own erroneous forfeiture, the trial court must mail a notice of forfeiture to the surety and bail agent.

We do not believe that the legislature intended to render courts powerless in a single court session to correct forfeitures erroneously declared without also mailing notices of forfeiture. "Although it is often said that section 1305 must be strictly construed 'in favor of the surety' [citation], the gravamen of the rule is that the forfeiture statutes are to be strictly construed to avoid forfeiture." (*People v. Indiana Lumbermens Mutual Ins. Co.* (2011) 194 Cal.App.4th 45, 51, italics omitted.) We have declined to interpret section 1305 in a way that "would result in an absurdity." (*Ranger*, *supra*, 51 Cal.App.4th at pp. 1384–1385.) Bankers's proposed rule constitutes such an absurdity.

"Notice pursuant to section 1305 enables the surety to decide whether to continue to risk funds on a defendant who has failed to appear." (*County of Orange*, *supra*, 140 Cal.App.4th at p. 1494.) Having received a notice of forfeiture informing it of the defendant's failure to appear, a surety can decide whether to surrender the defendant, thus obtaining exoneration of bail as a matter of right, or continue with the bond. (*Ibid.*) The logical corollary of this scheme is that, if the defendant in fact appears and the trial court does not forfeit the bail bond, the clerk need not—and should not—mail a notice of forfeiture.

6

The trial court initially forfeited the bail bond on July 16 because neither defendant nor his counsel was present, and the trial court was not informed that defense counsel had called saying he would be late. When defense counsel appeared five minutes after the trial court forfeited the bail bond, the trial court concluded that defendant had in fact appeared through counsel and therefore the bail bond should not be forfeited. (See § 977, subd. (a)(1).) Bankers does not challenge the trial court's conclusion that the defendant in fact appeared as required on July 16. Had Bankers been mailed a notice of forfeiture, the only facts the surety would have learned in any subsequent investigation were that defense counsel had organizational challenges, and the courtroom clerk could not hear his name on the phone. As the facts of this case illustrate, requiring trial courts to mail a notice of forfeiture for an entry of forfeiture that the trial court corrects during a single court session would do nothing to further the purposes of section 1305.

The legislative history of section 1305 does not counsel a different result. The Court of Appeal in *County of Los Angeles*, *supra*, 247 Cal.App.4th 875, summarized the statute's history. Before it was amended in 1998, section 1305 provided essentially that a bond forfeiture became effective when entered in the clerk's permanent minutes. The date of the entry would then trigger the clerk's duty under section 1305(b) to notify the surety of the forfeiture within 30 days. The 1998 amendment clarified that a bail forfeiture is declared in open court. The court proceeding (rather than the later entry of the memorializing order) thereby became the event that begins the 30-day period for notice to the surety. The legislative history suggests that the Legislature's purpose with the 1998 amendment was to provide clarity, uniformity, and promptness in notifying the surety of a forfeiture.

The significance of the 1998 amendment (whose provisions are still reflected in the current version of section 1305) is not the particular declaration by the court, but rather the fact that it is made in open court. In other words, if there is a forfeiture, it occurs in court and the 30-day window for notice to the surety is triggered as of that date

rather than on some variable (and perhaps much later) date when the minute order is prepared and entered. But by shifting the trigger to the court's declaration of forfeiture, we do not believe the Legislature intended to create an event or utterance which the court itself would be powerless to revisit or modify in response to facts immediately before it.

In favor of its proposed rule, Bankers urges the legislative purpose of clarity for court administrators. In our view, however, Bankers's proposed rule increases confusion at clarity's expense. Under Bankers's reading of section 1305, the court clerk would be required to mail a notice of forfeiture even if the minute order clearly indicated that the bail bond had not been forfeited. Bankers's rule would require the courtroom clerk to record in the minutes that the trial court first forfeited then reinstated the bail bond during the session, and a notice of forfeiture would have to be mailed even though the bond was in place at the beginning and at the end of the court appearance.

Clearly, a line must be drawn. The court in *County of Los Angeles* reaffirmed the rule that, once the court session has concluded, if the trial court has forfeited the bond in open court, then it may not later reinstate the bond (except, perhaps, with actual notice to the surety and bail agent), even later that day. (*County of Los Angeles*, *supra*, 247 Cal.App.4th at p. 883.) This failure to appear during a single court session—even if rectified within a few hours—triggers section 1305's twin requirements that the trial court declare the bail bond forfeited and the clerk mail a notice of forfeiture. Nothing we say here undercuts that holding. Nevertheless, the Legislature's desire for clarity and timeliness reflected in the 1998 amendment to section 1305 is achieved when the statute is interpreted to allow a trial court to correct a finding of forfeiture, just as it is allowed to correct other matters brought to its attention, during the course of a calendar session.

For these reasons, the trial court did not lose jurisdiction over the bail bond when it failed to mail a notice of forfeiture to the surety and bail agent following the July 19 court appearance.

8

### III. DISPOSITION

The order denying Bankers's motion to vacate the forfeiture and exonerate the bond and the trial court's entry of judgment on the bond are affirmed. The People shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278.)

_____
DANNER, J.

I CONCUR:



_____
GROVER, J.

*The People v. Bankers Insurance Co.*
**H045635**

# Mihara, J., dissenting.

I do not agree with my colleagues that the case before us may be meaningfully distinguished from *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2016) 247 Cal.App.4th 875 (*Financial Casualty*). In my view, Penal Code section 1305[1] required the superior court to send notice to the surety within 30 days after it declared a forfeiture in open court on July 19, 2016. Because it failed to do so, the court lacked jurisdiction to subsequently declare a forfeiture.

## I. Facts

On June 3, 2016, criminal defendant Manuel Gheeraert was arraigned, the public defender was appointed to represent him, and his bail was set at $25,000. He was ordered to appear in court for a hearing on June 13 at 1:30 p.m. Bankers Insurance Company (Bankers) issued a bail bond on June 3, and Gheeraert was released from custody.

Gheeraert failed to appear as ordered on June 13, 2016, the bail was ordered forfeited, and a bench warrant was issued. On June 22, Gheeraert appeared in court with attorney Richard Weese, who substituted in as Gheeraert's counsel of record. Weese explained that he had mistakenly failed to appear on Gheeraert's behalf at the June 13 hearing, presented the court with a "letter of reassumption" from Bankers, and asked the court to recall the warrant. The court set aside the forfeiture, accepted the letter, reinstated bail, and recalled the warrant. In the presence of both Gheeraert and Weese, the court set the next hearing for July 19 at 1:30 p.m.

---

[1] Subsequent statutory references are to the Penal Code.

On July 19, 2016, neither Gheeraert nor Weese appeared at 1:30 p.m. The court called the case and noted that neither Gheeraert nor Weese was present:[2] "Line Item 14, Manuel Gheeraert. [¶] No defendant; no attorney. [¶] Bench warrant, 7500. [¶] The bail forfeiture -- bail is forfeited. [¶] Bench warrant issued . . . ." At 3:40 p.m., according to the transcript, the court noted that Weese "walked in" and told the court that "he called, and he didn't leave his name. So we didn't know who it was that called. He said he would be here in a while, 45 minutes. As a result, five minutes ago, I issued warrants on four matters that were all Mr. Weese's. [¶] Now that Mr. Weese has appeared, in each of these matters, starting with line 7, the bench warrant issued is recalled. [¶] As to line item 14, the bail forfeiture is set aside. The bench warrant is recalled. The bond issued is reinstated since we never sent notice out . . . no fault of the defendant's and no costs."

On August 18, 2016, Weese appeared on defendant's behalf for a pretrial hearing. At Weese's request, the matter was continued to September 27. On September 27, the matter was continued to October 25, again at Weese's request, and defendant was ordered to appear on October 25. On October 25, neither Weese nor Gheeraert appeared, and the court ordered the bail forfeited and issued a bench warrant. The clerk sent notice on October 26 to Bankers of the October 25 forfeiture.

In May 2017, Bankers filed a motion to vacate the forfeiture and exonerate the bond. It argued that under section 1305, subdivision (b) the court had lost jurisdiction over the bond because it failed to give notice to Bankers of the July 19 forfeiture. On December 20, after many continuances, the court denied Bankers's motion. It reasoned that "while court is still in session . . . [and] the court session has

---

[2] The transcript states that it is from the "A.M. Session," but the court's remarks at 3:40 p.m. reflect that it is actually from the afternoon session. Everyone agreed below that the transcript is actually from the afternoon session.

2

not concluded . . . the forfeiture and the bench warrant and failure to appear are not effective at the moment of the judge saying it outloud but at the end of the session. I understand that the case law might indicate otherwise. I understand the 6th District might indicate when you appeal it." "I believe the law is different for one session." On December 26 the court entered summary judgment on the bond. Bankers timely filed a notice of appeal.

## II. Discussion

My colleagues conclude that no notice was required to be sent in this case because, during the "same court session," the court vacated the forfeiture that it had declared. The statutory scheme, which my colleagues admit we are required to "strictly" construe, does not allow for a "same court session" exception to the requirement that a notice be sent upon a declaration of forfeiture. (Maj. opn., *ante*, at pp. 4, 6.) Despite my colleagues' attempts to characterize the superior court's July 19, 2016 action declaring a forfeiture as a "mistake" and to deem that forfeiture declaration "erroneous," the superior court acted in full conformance with its statutory obligations when it declared a forfeiture after defendant and his attorney both failed to appear without any excuse at the scheduled time. (Maj. opn., *ante*, at p. 6.) The court's error was in failing to send the statutorily required notice of this forfeiture, which resulted in the court's lack of jurisdiction to subsequently declare a forfeiture.

### A. Statutory and Case Authority

"A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] . . . [¶] (D) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required." (§ 1305, subd. (a)(1).) "If the amount of the bond or money or property deposited

3

exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety or the depositor of money posted instead of bail. At the same time, the court shall mail a copy of the forfeiture notice to the bail agent whose name appears on the bond. [¶] . . . [¶] (3) The surety or depositor shall be released of all obligations under the bond if any of the following conditions apply: [¶] (A) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture."[3] (§ 1305, subd. (b).)

The issue before us in this case is not one of first impression. In *Financial Casualty*, the issue before the Second District Court of Appeal was "whether the trial court lost jurisdiction over a bail bond pursuant to the terms of Penal Code section 1305, subdivision (b) when a bail forfeiture was declared in open court and set aside on the same day, and when the court clerk failed to mail notice of the forfeiture to the surety and bond agent." (*Financial Casualty*, *supra*, 247 Cal.App.4th at p. 877, fn. omitted.) Even though *Financial Casualty* addressed the same issue that is before us in this case, my colleagues try to distinguish *Financial Casualty* on the ground that it involved a forfeiture declared in the morning and a vacating of that forfeiture in the afternoon, while the case before us involves a forfeiture declared in the afternoon and vacated later in the afternoon. But this *factual* difference is *legally* irrelevant.

In *Financial Casualty*, the criminal defendant had been ordered to appear at 8:30 a.m. on August 9, 2012. He failed to appear, and the court ordered bail forfeited at 10:05 a.m. (*Financial Casualty*, *supra*, 247 Cal.App.4th at p. 877.) The criminal defendant appeared that afternoon and offered an excuse for his absence that morning. The court notified the bond agent (but not the surety) by telephone that it intended to reinstate the bond, and it then set aside the forfeiture and reinstated the

---

[3] Section 1305 was amended in 2016, but none of this language was altered. (Stats. 2016, ch. 79, § 1; Stats. 2012, ch. 129, § 1.)

4

bond. The clerk did not send a notice of forfeiture to the surety. (*Id.* at pp. 877-878.) The criminal defendant failed to appear at a subsequent hearing, and the court ordered the bail forfeited. The clerk then sent a notice of forfeiture to the surety. (*Id.* at p. 878.) The surety sought to vacate the forfeiture and exonerate the bond on the ground that the court had lost jurisdiction over the bond when the clerk failed to send notice of forfeiture to the surety within 30 days of the August 9 forfeiture. The trial court denied the motion and entered summary judgment on the bond. (*Ibid.*)

The Second District concluded that the court had lost jurisdiction because it had failed to send notice of the August 9 forfeiture to the surety. The Second District highlighted the legislative history of section 1305. (*Financial Casualty*, *supra*, 247 Cal.App.4th at pp. 878-879.) Until 1993, section 1305 provided that if the criminal defendant failed to appear without sufficient excuse, "the court must direct the fact to be entered upon its minutes and [the bail] . . . must thereupon be declared forfeited, and . . . the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety . . . ." (Stats. 1979, ch. 873, § 10.5, p. 3041.) Thus, under the pre-1993 version of section 1305, the event that triggered the notice requirement was the entry of the forfeiture in the clerk's minutes.

The 1993 changes to section 1305 came in the wake of a series of conflicting cases concerning the notice requirement. In *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 (*Wilshire*), the criminal defendant failed to appear on November 29, 1971, and the court ordered the bond forfeited. The next morning, the criminal defendant appeared and offered an explanation for his absence. The court ordered the forfeiture set aside and reinstated bail without notifying the surety. After the criminal defendant failed to appear at a subsequent hearing and the court ordered the bail forfeited, the surety challenged the forfeiture on the ground that the court had lost jurisdiction due to the failure to send the required notice. (*Wilshire*, at

5

pp. 218-219.)  The Fifth District overturned the forfeiture:  "[W]e perceive no escape from the conclusion that the failure to give the notice of the forfeiture invalidated the bond and rendered the judgment based thereon void."  (*Wilshire*, at p. 221.)

A contrary result was reached in *People v. Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51 (*Amwest*).  The criminal defendant in *Amwest* failed to appear at 9:00 a.m. on December 19, 1978, and the court ordered the bail forfeited.  Thirty minutes later, the criminal defendant appeared and offered an excuse for his tardiness.  (*Amwest*, at p. 53.)  The court vacated the forfeiture and reinstated the bail, but it did not send notice of the forfeiture to the surety.  (*Ibid.*)  After a subsequent bail forfeiture, the surety sought to exonerate the bond because the court had lost jurisdiction by failing to send notice to the surety of the earlier forfeiture.  Although the Second District acknowledged that *Wilshire* was "basically in point," it deemed the result required by *Wilshire* "absurd," refused to apply it, and upheld the bail forfeiture. (*Amwest*, at pp. 55-56.)

The Fifth District attempted to reconcile *Amwest* and *Wilshire* in *People v. Surety Ins. Co.* (1983) 148 Cal.App.3d 351 (*Surety*).  In *Surety*, the criminal defendant failed to appear at a 9:00 a.m. hearing on December 24, 1981.  The clerk's minutes stated that the bond was forfeited, the defendant "appear[ed] late," and the bond was then reinstated.  On December 29, the criminal defendant failed to appear, the bond was forfeited, and the clerk sent notice to the surety of the December 29 forfeiture.  (*Surety*, at pp. 353-354.)  The Fifth District expressed concern about what it deemed "the inadequacy of the statute . . . ."  (*Surety*, at p. 353.)  The Fifth District believed that the contrary results in *Wilshire* and *Amwest* "were consistent and proper if in each case ordinary courtroom clerical practice was followed.  We return to *timing* and the relationship of the clerk's minutes to the judge's oral orders.  By this approach we keep faith with the often stated rule expressed in [*Wilshire*] that when a statute requires a court to exercise its jurisdiction in a certain way or under certain

6

restrictions, acts to the contrary or beyond those limits are in excess of the court's statutorily imposed jurisdiction." (*Surety*, at p. 356.) "Presumptively the clerk [in *Wilshire*] had entered the order in the permanent minutes," while "[p]resumptively the clerk [in *Amwest*] had not yet entered in the minutes the order declaring the bond forfeited." (*Surety*, at p. 356.)

The Fifth District's reasoning depended on its belief that a bail forfeiture was not effective until it was entered in the clerk's minutes (plus its post hoc hypothesis about the facts of *Wilshire* and *Amwest*). It reasoned: "It has long been held that oral orders made in court are subject to the plenary power of the court until 'entered.' [Citations.] Unless the clerk prepares the 'permanent minutes' in court when the oral orders are announced, the judge is free to make new and different orders so long as it is done before the court clerk or a minute clerk prepares the permanent minutes. The official 'entry' is in the permanent minutes, not the rough minutes. [Citation.]" (*Surety*, *supra*, 138 Cal.App.3d at p. 357.) "[W]hile the trial court remains in session or available during the day of the nonappearance, it will be presumed that its orders concerning bail forfeiture, including any changes, were all made prior to entry in the permanent minutes." (*Ibid.*) The Fifth District concluded that the clerk had not yet entered the forfeiture in the permanent minutes when the defendant appeared and the forfeiture was vacated, so it held that the court retained jurisdiction over the bond. (*Ibid.*)

The pre-1993 version of section 1305 that was in force at the time of *Wilshire*, *Amwest*, and *Surety* was repealed in 1993 and replaced with a new section 1305 that contained the same language as the current version except that it did not include the words "in open court." (Stats. 1993, ch. 524, § 1 ["A court shall declare forfeited . . . ."].) This legislative change eliminated the multiple references in the pre-1993 version of section 1305 to the clerk's minutes. The pre-1993 version had required the forfeiture "to be entered upon its minutes" and identified the event that

7

triggered the notice requirement as the clerk's "entering the fact of such failure to appear in the minutes . . . ." (Stats. 1979, ch. 873, § 10.5, p. 3041.) By enacting the 1993 version of section 1305, the Legislature shifted the triggering event from the clerk's entry of the forfeiture in the minutes to the court's declaration of the forfeiture.

The 1998 amendment of section 1305 confirmed this shift when it added the "in open court" language to the statute. (Stats. 1998, ch. 223, § 2.) The 1998 amendment was sought by sureties and opposed by the Judicial Council. The legislative history of the 1998 amendment reveals that it was intended to provide *more prompt notice* to the surety. "This bill requires that the declaration of forfeiture be made in open court at the time the defendant fails to appear and a bench warrant is issued. This is a minor technical change to existing law and only requires the court to openly order forfeiture of the bail - the rationale being that the bail agent receives notice of the forfeiture at the time, rather than when the notice is sent and is able to immediately pursue the fugitive. Despite Judicial Council's objection, this requirement places an insignificant burden on the court as it only requires the court to state 'bail is forfeited'. It is a better practice to openly declare the forfeiture (most courts already follow this procedure) . . . ." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2083 (1997-1998 Reg. Sess.) May 5, 1998; see *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 711-712 [discussing this legislative history].) " 'The court is presently required to declare forfeited the undertaking of bail, if without excuse, the defendant fails to appear in court. Often the bond is not declared forfeited in open court; rather it is declared forfeited days or weeks later by a clerk of the court. By delaying the declaration, the defendant has an opportunity to flee and avoid apprehension.' " (*Ibid.*) The 1993 enactment of the new version of section 1305 and the 1998 amendment of it were clearly intended to make a bail forfeiture fully effective for purposes of requiring notice to the surety upon declaration by the court,

8

rather than upon entry of the forfeiture in the clerk's minutes. These statutory changes eliminated the foundation for *Amwest* and *Surety*.

No subsequent case has resurrected the *Amwest* and *Surety* analyses that were implicitly rejected by the Legislature in 1993 and 1998. In *County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488 (*Lexington*), the criminal defendant failed to appear on March 25, 2003, and the court declared a forfeiture in open court. The clerk did not send notice to the surety of the forfeiture. Two days later, the criminal defendant appeared and filed a document signed by the bail agent stating that the surety would reassume the bond upon the court's reinstatement of bail. The court vacated the forfeiture and reinstated bail. Much later, the criminal defendant failed to appear at a hearing, and the court ordered the bail forfeited. (*Lexington*, at p. 1491.) The Fourth District observed that "[n]otice pursuant to section 1305 enables the surety to decide whether to continue to risk funds on a defendant who has failed to appear" and held that the court lost jurisdiction when the clerk failed to send notice to the surety of the March 25 forfeiture. (*Lexington*, at p. 1494.) The court criticized *Amwest*, declined to follow it, and followed *Wilshire*. (*Lexington*, at pp. 1495-1496.)

### B.  Application to this Case

The legislative history of section 1305 is completely inconsistent with the trial court's approach in this case. The Legislature's repeal of the pre-1993 version of section 1305, enactment of the 1993 version of section 1305, and 1998 amendment of that statute replaced the language referencing the clerk's entry of the forfeiture in the minutes with language explicitly establishing that a forfeiture occurs when the court declares it in open court. These actions were intended to provide more timely notice to sureties by decoupling the forfeiture from the entry in the minutes. By doing so, the Legislature clearly expressed its intent that a forfeiture be effective at the moment it is declared in open court, rather than when the clerk enters the forfeiture in

9

the minutes. It follows that the court's forfeiture in this case was effective the moment it was declared and therefore triggered the requirement for notice to the surety. The clerk's failure to provide that notice released Bankers from the bond. I agree with *Financial Casualty*, and I do not agree with my colleagues' attempt to reengraft the approach of *Amwest* and *Surety* onto the current version of section 1305, which was plainly intended to reject that approach.

My colleagues assert that the superior court "erroneously declared" an "erroneous" forfeiture when defendant and his attorney failed to appear as ordered at 1:30 p.m. on July 19, 2016. (Maj. opn., *ante*, at p. 6.) Not true. When defendant and his attorney both failed to appear at the appointed time or to offer any excuse at that time for their nonappearance, the superior court was *statutorily obligated* to declare a forfeiture. Nothing about the court's forfeiture declaration at that time was "erroneous." (*Ibid.*) To try to support their inaccurate characterization of the court's forfeiture declaration, my colleagues claim that "the court was not informed" that defendant's attorney had called to say he would be late. (*Id*. at p. 7.) The record reflects that defendant's attorney did not identify himself when he called the court, so there was no mistake by the court (or its staff). My colleagues also assert that "the trial court concluded that defendant had in fact appeared through counsel" and that "defendant in fact appeared as required on July 16." (*Ibid*.) While defendant's counsel belatedly appeared and offered an excuse that the court decided to accept, neither of them appeared "as required" because the hearing was scheduled for 1:30 p.m., not more than two hours later when defendant's counsel arrived. Though my colleagues dismiss as pointless any notice to Bankers of this nonappearance, had Bankers been given notice of this event, as required by statute, it would have had the opportunity to reassess the risk of defendant's future nonappearance in light of this second event of nonappearance, which made both defendant and his attorney appear unreliable.

10

While I agree with my colleagues that "a line must be drawn," that line was drawn by the Legislature when it changed section 1305 in 1993 and 1998, and we are not free to adjust that line as we deem appropriate. (Maj. opn., *ante*, at p. 8.) We are not permitted to add a "same court session" exception to the plain language of section 1305, as enacted and amended by the Legislature, which we are bound to "strictly" construe. I dissent because I cannot join a holding that disregards the rules that govern our strict construction of an unambiguous statute.

_____
Mihara, Acting P. J.

*People v. Bankers Insurance Co.*
H045635

11

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. C1639029 |
| --- | --- |
| Trial Judge: | Hon. Joshua Weinstein |
| Counsel for Defendant/Appellant | Law Office of John Mark Rorabaugh<br>John Mark Rorabaugh<br>Crystal Rorabaugh |
| Counsel for Plaintiff/Respondent | Office of the County Counsel<br>James R. Williams, County Counsel<br>Christopher A. Capozzi, Deputy County Counsel |